# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| FELLOWSHIP OF CHRISTIAN ATHLETES, | ) |
| Plaintiff, | ) |
| v. | ) No. 12-445-CV-W-DW |
| AXIS INSURANCE COMPANY, et al., | ) |
| Defendants. | ) |

## ORDER

Before the Court are Defendant Axis Insurance Company's Motion for Summary Judgment (Doc. 47) and Defendant Ironshore Speciality Insurance Company's Motion for Summary Judgment (Doc. 62).

## I. BACKGROUND

This declaratory judgment action arises out of a lawsuit filed by the survivors of Nehmson Sanon and Gael Chrispin, two boys who drowned on July 14, 2010 at the Pella Aquatic Center in Pella, Iowa. At the time of the drownings, the boys were attending a youth sports camp organized and operated by the plaintiff in this action, the Fellowship of Christian Athletes ("FCA"). The FCA sponsored a pool party at the Pella Aquatic Center as an activity for its campers. The survivors of Sanon and Chrispin have filed suit in the Iowa District Court for Polk County, alleging claims against the FCA for negligence and

loss of consortium (the "underlying litigation").[1]

After the filing of the underlying litigation, the FCA instituted this action seeking a determination of the rights and obligations of the parties under three policies of insurance issued to the FCA. At the time of the pool party, the FCA was insured by policies issued by Defendant Axis Insurance Company ("Axis"), Defendant Ironshore Specialty Insurance Company ("Ironshore") and Defendant RSUI Indemnity Company ("RSUI"). The Axis policy provides coverage limits of $1,000,000 each occurrence and $5,000,000 in the aggregate. The Ironshore policy provides coverage with limits of $10,000,000 in excess to Axis' primary liability policy. The RSUI policy provides coverage with limits of $5,000,000 each occurrence and in the aggregate in excess of the other two insurance policies.

At issue in this declaratory judgment action is whether the drownings of Sanon and Chrispin constitute one "occurrence" or two under the Axis insurance policy. Axis maintains that the drownings are one occurrence, therefore its $1,000,000 coverage limit applies. Ironshore maintains that each boy's drowning is a separate occurrence, and therefore Axis must pay $2,000,000 rather than $1,000,000 to satisfy its obligations under its policy. The FCA and RSUI take no position on whether the drownings constitute one occurrence or two. Both Axis and Ironshore have filed motions for summary judgment

---

[1] Claims were also brought against the City of Pella for negligence, conduct constituting criminal offense, premises liability, due process violation and loss of consortium; however the City of Pella and the claims against it are not at issue in this declaratory judgment action.

regarding this issue.

Ironshore also seeks summary judgment on Axis' crossclaim for declaratory judgment against Ironshore and the FCA. In its crossclaim, Axis seeks "a judicial determination of Ironshore's obligations under the Ironshore policy, including a judicial determination as to whether Ironshore has a duty to defend FCA, or any responsibility to share in defense expenses incurred, after Axis has offered to pay the full limits of the Axis policy in resolution of the claims alleged against FCA in the Iowa complaint."

## II. STANDARD

Summary judgment is appropriate if there are no disputed issues of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The burden is placed on the moving party to establish both the absence of a genuine issue of material fact and that such party is entitled to judgment as a matter of law. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-90 (1986). A material fact is one which might affect the outcome of the suit, and a genuine dispute exists if a reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

## III. UNDISPUTED FACTS

The following facts are undisputed and relevant to resolution of Axis' and Ironshore's motions for summary judgment.

## A. Facts Related to Drownings

The Pella Aquatic Center pool party lasted from 8:30 p.m. to 9:30 p.m. on July 14, 2010. During that time FCA campers had exclusive use of the pool. The FCA staff noticed that Sanon and Chrispin were missing when the campers were loading the buses after the pool party. The boys were then found lying side-by-side, at the bottom of the deep end of the pool, near the main drain. The boys were pulled out of the water but could not be resuscitated. The death certificate for Chrispin lists his time of death as 10:42 p.m. The death certificate for Sanon lists his time of death as 10:44 p.m. Both autopsy reports deem the cause of death as drowning and the manner of death as accidental.

## B. Allegations in Underlying Litigation

The survivors of Sanon and Chrispin have alleged in the underlying litigation that the FCA was negligent in various respects. Specifically, the allegations are that the FCA was negligent by: allowing Sanon and Chrispin to enter the Pella Aquatic Center after their parents signed a "Student Participant Permission/Waiver Form" indicating that the boys could not swim; allowing Sanon and Chrispin to enter the Pella Aquatic Center unsupervised knowing that both boys were unable to swim; failing to properly train and supervise its camp counselors; taking the boys from the camp to the pool when they were unable to swim; and failing to exercise reasonable care under the circumstances.

## C. Axis Insurance Policy

The Axis policy states that it "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' . . . to which this insurance applies." The insurance policy applies to bodily injury only if the bodily injury is caused by an "occurrence" that takes place in the coverage territory and during the policy period. An "occurrence" is "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

The amount Axis will pay for damages is limited as described in the Limits of Insurance contained in Section III of the policy. The Limits of Insurance fix the most Axis will pay regardless of the number of insureds, claims made, suits brought, or persons or organizations making claims or bringing suits. The Each Occurrence Limit of liability for the Axis policy is $1,000,000. The Each Occurrence Limit is the most Axis will pay for the sum of damages because of all bodily injury arising out of any one occurrence.

## D. Ironshore Insurance Policy

The Ironshore insurance policy states that Ironshore has

> the right and duty to defend any Suit against the Insured that seeks damages for Bodily Injury, Property Damage, Personal Injury or Advertising Injury covered by this Policy, even if the Suit is groundless, false or fraudulent, but only in the event that:
>
> 1.  the total applicable limits of Scheduled Underlying Insurance have been exhausted by payment of Loss to which this Policy applies and the total applicable limits of Other Insurance have been exhausted by payment of Loss; or

> 2. the damages sought because of Bodily Injury, Property Damage, Personal Injury or Advertising Injury are not covered by Scheduled Underlying Insurance or any applicable Other Insurance, or would not be covered under Scheduled Underlying Insurance or any applicable Other Insurance, but for its exhaustion by the payment of Loss;
>
> and provided further that no other insurer has a duty to defend or is defending such Suit.
>
> . . .
>
> When the amount of Loss has been determined by an agreed settlement or a final judgment, [Ironshore] will promptly pay on behalf of the Insured the amount of such Loss falling within the terms of this Policy. An agreed settlement means a settlement agreed to by [Ironshore], the Insured and the claimant or the claimant's legal representative.

## IV. DISCUSSION

In their motions for summary judgment, the parties seek resolution of the following: 1) whether the drownings constitute one occurrence or two under the Axis policy and 2) whether Axis has stated a viable crossclaim for declaratory judgment. The interpretation of an insurance policy is governed by state law, David v. Tanksley, 218 F.3d 928, 930 (8th Cir. 2000), and the parties do not dispute that Missouri law applies in determining these issues.

### A. Number of Occurrences

The Court finds that, under Missouri law, the drownings constitute one occurrence under the Axis policy. Two prevailing doctrines exist regarding interpretation of the term "occurrence" in insurance policies. "Under the 'cause' approach, an insured's single act is considered the accident from which all claims flow. Under the 'effect' approach, each

claim arising out of an insured's act is considered a separate accident." Munroe v. Cont'l W. Ins. Co., 837 F. Supp. 2d 1045, 1049-50 (E.D. Mo. 2011) (internal marks and citations omitted) (quoting Kan. Fire & Cas. Co. v. Koelling, 729 S.W.2d 251, 252 (Mo. Ct. App. 1987)).

Although no Missouri case exists with facts directly on point with the case at bar, courts applying Missouri law have adopted the "cause" approach when determining the number of occurrences under an insurance policy. See, e.g., Munroe, 837 F. Supp. 2d at 1050; Allstate Prop. & Cas. Ins. Co. v. McBee, No. 08-534-CV-W-HFS, 2009 WL 1124973, at * 4-5 (W.D. Mo. Apr. 27, 2009); Koelling, 729 S.W.2d at 252-53 (applying cause approach and finding one occurrence where two automobile collisions took place almost simultaneously).

The Court finds the analysis in McBee to be instructive, as the allegations of negligence in McBee are comparable to those in the underlying litigation in this case and the definition of "occurrence" in the McBee insurance policy is the same as the definition in the Axis policy. In McBee, the insureds owned a dog, which escaped and attacked the McBees as they were jogging along the road adjacent to the insureds' property. The McBees brought suit in the Circuit Court of Jackson County, Missouri, alleging their injuries were the result of the insureds' failure to keep the dog maintained on their property. The insurance company filed a declaratory judgment action in this Court, seeking a determination as to whether the McBees' injuries constituted one or two occurrences under the applicable insurance policy.

In both the McBee policy and the Axis policy, an occurrence is defined to be "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Applying the cause approach, and considering this definition of an occurrence, the Court found that the McBees' injuries constituted one occurrence under the policy. The Court held that "the injuries sustained by each of the McBees are the result of continuous exposure to substantially the same harmful condition, the failure to prevent the dog's escape, considered as a single incident." Similarly here, the deaths of Sanon and Chrispin are alleged to be the result of the exposure to the same general harmful condition: FCA allowing the boys to attend the pool party unsupervised while knowing that they could not swim and failing to properly train and supervise its camp staff. Furthermore, the boys arrived at the Pella Aquatic Center at the same time, swam in the pool during the same one-hour time period, were discovered at the bottom of the pool at the same time, and their times of death were reported to be within two minutes of each other. As such, the Court finds the deaths to be a single occurrence under the Axis policy.

### B. Crossclaim

The Court finds that Axis' crossclaim for declaratory judgment against Ironshore and the FCA must be dismissed. Ironshore argues that Axis' crossclaim must be dismissed because it does not present an actual controversy. Axis' crossclaim seeks a declaration of Ironshore's obligations under Ironshore's policy as to its duty to defend and share in defense costs after Axis has offered to pay the full limits of the Axis policy in resolution of the claims in the underlying litigation. Axis maintains that "[s]hould Axis

make a good faith offer of its policy limits to settle a portion of the Underlying Case (as it has), then, Ironshore should not be permitted to preclude such settlement by unilaterally withholding its agreement . . . ."

The Court agrees with Ironshore that Axis has not alleged Ironshore has precluded such a settlement by unilaterally withholding its agreement. The Declaratory Judgment Act allows the Court to declare the rights of interested parties, however only in the case of an "actual controversy." See 28 U.S.C. § 2201(a). Because Axis' crossclaim does not allege an actual controversy, any order of this Court on the issue would be an advisory opinion. Therefore, Ironshore's motion for summary judgment as to Axis' crossclaim is granted and Axis' crossclaim is dismissed.

## V. CONCLUSION

For the foregoing reasons, the Court finds that the drownings constitute one occurrence under the Axis insurance policy and Axis' crossclaim must be dismissed. Although it appears to the Court that this ruling disposes of the FCA's breach of contract claim, the parties are directed to inform the Court whether this order disposes of all pending issues in this action. Accordingly, it is hereby ORDERED that:

(1)  Defendant Axis Insurance Company's Motion for Summary Judgment (Doc. 47) is GRANTED;

(2)  Defendant Ironshore Speciality Insurance Company's Motion for Summary Judgment (Doc. 62) is GRANTED IN PART, in that Axis' crossclaim is DISMISSED, and DENIED IN PART; and

(3) Within fourteen (14) days, the parties shall update the Court as to whether this action may be dismissed in its entirety.

SO ORDERED.


Date:  July 24, 2013                                          /s/ Dean Whipple
                                                              Dean Whipple
                                                              United States District Judge